* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. This matter concerns a denied neck herniation allegedly occurring on February 15, 2001.
2. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. An employee-employer relationship existed between plaintiff and defendant-employer.
4. Defendant-employer was self-insured with Kemper Risk Management Services as its adjusting agent.
5. The Industrial Commission has jurisdiction of the parties and the subject matter herein.
6. All parties are correctly designated and there is no question as to misjoinder or nonjoinder of the parties.
7. On February 15, 2001, plaintiff told his employer that his neck was hurting as a result of his regular job duties. An Industrial Commission Form 19 was completed on February 17, 2001.
8. On February 20, 2001, an Industrial Commission Form 61 was filed denying the compensability of plaintiff's claim on the grounds of no injury by accident or occupational disease.
9. On July 28, 2001, plaintiff completed and filed an Industrial Commission Form 18 indicating that he had suffered a cervical herniation on or about January 15, 2001, in which "the accident or occupational disease was caused by turning around while operating forklift."
10. On January 30, 2002, plaintiff filed an Industrial Commission Form 33 Request for Hearing alleging that he was entitled to benefits based on a cervical herniation occurring on or about February 15, 2001.
11. On April 8, 2002, defendant filed an Industrial Commission Form 33R denying the compensability for an injury occurring on February 15, 2001.
12. On October 10, 2002, plaintiff filed a second request for hearing. This form was apparently amended to add additional witnesses.
13. On or about November 7, 2002, defendant filed a second Industrial Commission Form 33R denying plaintiff's claim for benefits and requesting a credit for short-term disability benefits paid to plaintiff.
14. On January 10, 2003, plaintiff filed an Amended Industrial Commission Form 33 alleging an occupational disease involving a back injury, tendonitis, and carpal tunnel syndrome. No date of injury was stated due to the fact that the claim was being made under an occupational disease theory; however, the form stated that benefits were due beginning January 11, 2001, and continuing to the present time.
15. An Amended Industrial Commission Form 18 was filed also filed on January 10, 2003, in which plaintiff claimed that he had sustained an occupational disease involving a back injury, osteoarthritis, tendonitis, and carpal tunnel syndrome as a result of working for defendant-employer for over twenty years with duties including heavy lifting, repetitive motion, driving of a fork lift in an unconventional manner, twisting and bending. Disability was alleged to have begun on January 11, 2001.
16. All claims have been consolidated and are referred to by the Industrial Commission as I.C. File No. 120146.
17. Plaintiff's average weekly wage as of the date of the alleged injury is $503.20.
18. Should benefits be awarded to plaintiff, the self-insured defendant-employer would be entitled to receive a credit for sick pay ($704.48), short-term disability ($6,580.80), and long-term disability ($9,268.05). Plaintiff received sick pay for a period of 3 weeks. Plaintiff received short-term disability for twenty-six (26) weeks beginning on February 2, 2001, and continuing through July 26, 2001. Plaintiff received long-term disability benefits from July 27, 2001, through September 26, 2002.
19. At and subsequent to the hearing, the parties submitted the following:
 a. A Packet of plaintiff's Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2);
 b. A Packet of Industrial Commission forms, which was admitted into the record, and marked as Stipulated Exhibit (3);
 c. Plaintiff's Pre-Hearing Deposition, which was admitted into the record, and marked as Stipulated Exhibit (4); and
 d. Plaintiff's Answers to Defendant's Interrogatories, which was admitted into the record, and marked as Stipulated Exhibit (5).
20. The issues to be determined are whether plaintiff has sustained a compensable cervical herniation as the result of an injury by accident arising out of and in the course of his employment or as the result of an occupational disease pursuant to N.C. Gen. Stat. § 97-53(13), and if so, to what benefits would plaintiff be entitled.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-seven years of age, with his date of birth being December 30, 1946.
2. At the time of the alleged incident giving rise to this claim, plaintiff had been employed by defendant-employer for approximately twenty-six years. During the ten years leading up to his alleged work-place injury or occupational disease, plaintiff had worked as a forklift operator in the Receiving Department.
3. Plaintiff contends that his normal job duties of operating a forklift caused him to develop neck problems and a herniated cervical disc on February 15, 2001. However, no accident or specific incident was reported by plaintiff at that time. In fact, plaintiff contended that his years of having to rotate his neck numerous times a day in order to drive a forklift backwards pursuant to defendant's instructions had caused him to develop neck problems and a herniated cervical disc.
4. At the hearing before the Deputy Commissioner, plaintiff testified that he was injured on January 11, 2001, when the forklift he was operating collided with a pallet. Specifically, plaintiff alleges that his forklift hit or ran over the edge of a pallet that was protruding into the aisle from an adjacent row, causing the axle of his forklift to raise and jar him when the axle fell from the pallet. Plaintiff further testified that his forklift was fully loaded with rolls of plastic at the time of this incident. As a result of this incident, plaintiff testified that he experienced significant pain in his back.
5. Plaintiff's supervisor, Mr. Paul Buchanan testified during his deposition that a pallet of materials weighs several thousand pounds and would produce considerable force if a forklift rode onto an adjacent pallet and then had its wheel or wheels fall from that pallet. Mr. Buchanan further testified that plaintiff did not report a specific traumatic incident or accident to him.
6. Following the alleged incident in January 2001, no injury or accident report was completed by plaintiff. Mr. Stephen Connell, defendant's Safety Manager, testified that he was unaware of plaintiff's claim of having been injured at any specific time or as the result of any specific incident.
7. On January 12, 2001, plaintiff was examined by his family physician, Dr. Charles Baker. On that date, no specific event, injury or accident was reported by plaintiff to Dr. Baker. Plaintiff did report having experienced right upper back pain radiating into his right upper and lower abdomen and leg for approximately one week. Dr. Baker diagnosed plaintiff as having musculoskeletal pain.
8. Upon the referral of Dr. Baker, plaintiff was then examined by Dr. Norman Cope, a chiropractor. As was the case with Dr. Baker, no specific event, injury or accident was reported by plaintiff to Dr. Cope. However, Dr. Cope's notes do reflect that plaintiff reported worsening neck pain after doing something with wood.
9. Plaintiff was eventually referred to Dr. James Hoski, an orthopedic surgeon in Asheville. Dr. Hoski first examined plaintiff on March 9, 2001, at which time plaintiff was reported experiencing pain in his neck, back, arms and legs. Dr. Hoski recommended further testing, including a total body bone scan to rule out cancer. On March 23, 2001, Dr. Hoski reviewed a cervical MRI and diagnosed plaintiff as having severe spinal stenosis at C5-6 with a large disc herniation on the right at the C4-C5 level. For this condition, Dr. Hoski recommended surgery consisting of an anterior cervical discectomy and fusion. This procedure was performed on March 29, 2001, and plaintiff was discharged from the hospital the following day. At no time has plaintiff reported to Dr. Hoski that his injuries were the result any specific event or accident.
10. Plaintiff has a history of experiencing back problems prior to January 2001. For these previous problems and related symptoms, plaintiff primarily received treatment from Dr. Baker. Additionally, following an April 1999 injury resulting from a fall at his home, plaintiff received treatment for his back from Dr. John C. Newell. Dr. Newell did not provide treatment for the any condition which is the subject of this claim.
11. For his back and pain symptoms, plaintiff has also received treatment from Dr. Kristen Gowin, who is board certified in rheumatology and internal medicine. Dr. Godwin has diagnosed plaintiff as having DISH (diffuse idiopathic skeletal hyperstosis) with radicular symptoms, a condition that results in unusually large and fast growing osteophytes. During her deposition, Dr. Godwin testified that during her one-time evaluation of plaintiff that he could not recall any specific traumatic event that might have caused his symptoms.
12. During his deposition, Dr. Hoski did opine that plaintiff's cervical disk most likely herniated in January 2001. However, when asked about whether he could render a causation opinion upon being presented with facts relating to plaintiff's job duties and his work on a family owned tree farm, Dr. Hoski testified: "I don't have one within a reasonable degree of medical certainty."
13. Based upon the totality of the credible evidence of record, the Full Commission finds that plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer on January 11, 2001, and did not sustain an injury by accident in the form of a specific traumatic incident of the work assigned on that date.
14. Regarding plaintiff's alternative occupational disease theory, Dr. Hoski testified that a herniated disc is something that occurs at a specific moment in time. No medical expert has rendered an opinion to a reasonable degree of medical certainty that plaintiff's duties for defendant-employer caused or significantly contributed to his cervical disc herniation. Additionally, and contrary to what is contended by plaintiff, Dr. Hoski testified that he could not state with any certainty whether or not plaintiff's duties for defendant-employer exposed him to an increased risk of sustaining a his cervical disc herniation. Likewise, no other medical expert has rendered a positive opinion on increased risk.
15. Based upon the totality of the credible evidence of record competent, plaintiff's employment with defendant-employer did not cause or significantly contribute to the degenerative disc disease, osteoarthritis, or cervical herniated disc for which he underwent surgery on March 29, 2001. Additionally, plaintiff's employment with defendant-employer did not expose him to an increased risk of developing degenerative disc disease, osteoarthritis, a herniated disc or other neck or back related conditions as compared to members of the general public not so employed.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer on January 11, 2001. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff did not sustain an injury as the result of a specific traumatic incident of the work assigned on or about January 11, 2001. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff's employment with defendant-employer did not cause the degenerative disc disease, osteoarthritis, or herniated disc for which he underwent surgery on March 29, 2001. N.C. Gen. Stat. § 97-53(13).
4. Plaintiff's employment with defendant-employer did not expose him to an increased risk of developing degenerative disc disease, osteoarthritis, a herniated disc or other neck or back related conditions as compared to members of the general public not so employed. Id.
5. Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. §§ 97-2(6) and 97-53(13).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim must be, and is hereby, DENIED.
2. Each side shall bear its own costs.
This 3rd day of October 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER